ISAAC P. HAZARD *v.* THOMAS C. DURANT, THE UNION PA-
CIFIC RAILROAD COMPANY and others.

SAME *v.* THOMAS C. DURANT, OAKES AMES and others.

Where a party filed a bill in behalf of himself and such others as might come in
and become parties, and other persons applied to become parties, and an order
was made granting the motion, *held,* that actual interlineation of the names of
the new parties was not necessary, as the record, when made up, would state
all the necessary facts, viz., that one party brought the bill for himself and such
others as might come in, and would also state that certain others did come in
and become parties, and a sworn bill (like the present) should not be erased
or interlined unnecessarily.

The provision in Equity, rule 20, that a party shall be considered as abandoning
any amendment he has had leave to make unless he files his amendments, or
makes them on or before the next rule day, applies only to amendments made
under rule 19, viz., after answer, &c.

NOTE.—The Reporter is indebted to Mr. Justice Potter for the following opinion
rendered upon a motion heard before him singly, in two cases brought in Newport
county, but argued before him by agreement at the October term, 1868, of the
court for the county of Providence, to remove the above entitled causes to the
United States Circuit Court. The head notes were also prepared by Mr. Justice
Potter, before delivering the opinion to the Reporter.

An order was made by the clerk, after copy taken, granting leave to amend on the conditions imposed by the rules, viz., furnishing a fair copy to the defendant or defendants, (Rule 18.) *Held*, a reasonable construction of the rule, that the complainant should furnish such copy only to the defendant or person who had taken a copy ; and where an attorney had taken a copy of the bill without stating for whom he appeared, or for whom the copy was taken, that notice to the attorney was sufficient ; and that the party amending could not be required to look beyond the rule or order book, or the papers, to see who had taken a copy.

Amendments moved for and granted, and properly notified, are, for all practical purposes, to be considered as made, and the court would allow them to be perfected, if necessary, *nunc pro tunc.* The court will see that any parties who have appeared shall not suffer from want of notice ; and this is the substance of the equity of the matter.

Under the act of 1789, it has been decided that the citizenship of all the plaintiffs taken together, and of all the defendants taken together, must be such as to make the case removable; and that all the defendants must unite.

It has been also held, under that act, that only those suits can be removed which could originally be brought in the United States Courts. The same language upon which Judge Story based that decision is used in all the subsequent acts.

The act of July 27, 1866, provided for this additional case, viz., where one of several defendants was a citizen of the state where the suit is brought. The language as to plaintiffs is the same as in that of 1789.

The act of March 2, 1867, so far as the parties are concerned, uses the same language as that of 1789, and the same construction must be applied to it.

Under the act of July 27, 1868, it makes no difference where the parties reside. *Held*, under this act, that comparing the language of it with that of 1866, which provided for cases of several defendants, (and *quaere* a partial removal,) that the act of 1868 only provides for the case particularly described in it, viz., where the corporation is the sole defendant.

And *quaere*, whether it is sufficient merely to *assert* that the petitioner has such a defence as the act contemplates, without satisfying the court of the fact.

The bonds which the act of Congress of 1789, providing for the removal of suits from the state to the federal courts, requires should be given to the state court by the defendants at the time of entering their appearance, to ensure their appearing and giving bail in the United States court, must be several, or joint and several, and not joint bonds. The provision as to surety is nearly the same in the other acts.

POTTER, J. These suits are now before the court upon motions by the several defendants, to remove them to the United States Circuit Court under four several acts of Congress, viz. : 1789, 1866, 1867 and 1868.

Before considering the effect of the several acts of Congress, it is necessary to determine who are properly the parties in the suits. All the complainants are citizens of Rhode Island, except Henry Martin, who is a resident of the state of New York.

The original bills were filed August 22d, 1868, and on the same day application was filed by Rowland Hazard and others, to become parties to the suit. On the 2d day of September, a copy

of the bill having in the meantime been taken by C. C. Van Zandt, Esq. attorney, a motion was filed by the original complainants and Henry Martin, of New York, under the 18th rule in equity, to amend the bills and make said Martin a party complainant. On the same day (being rule day) an order was entered by the clerk granting the motion on the condition imposed by the rules, and the solicitor of the complainant on the same day gave no-tice of the motion and order to Mr. Van Zandt, the only per-son who had then taken a copy of the bills.

The plaintiffs also, August 29th, before copy taken, amended their bills by making Rowland G. Hazard, of Rhode Island, a party defendant therein, but it is agreed so far as these notices are concerned, that R. G. Hazard is not to be considered as a party defendant:

It is objected that Henry Martin, of New York, has never been properly made a party complainant to the bills, inasmuch as the bills have not been actually amended by inserting or in-terlining his name therein, and that the 20th rule in equity pro-vides that if the amendment be not actually made before the next rule day (which was in October) it shall be considered as abandoned. But on examining the rule the court is satisfied that the 20th rule refers only to certain amendments authorized by rule 19th, (viz., amendments after answer, &c.) and does not at all affect rule 18th.. And that it was not intended to be af-fected by the general reference in rule 83, to the English and United States Supreme Court chancery rules, is shown by the fact that the requisition of making the amendment before next rule day is expressly limited in the Rhode Island rules to mo-tions under rule 19th, for amendment after answer, &c. The practice has been rather loose, and perhaps the rules should impose more stringent terms.

The defendants making the present motion also contend that after copy taken, the defendants must be *personally* notified of any proposed amendment. This seems to the court an unrea-sonable construction of the rule, and one we believe never prac-ticed upon enough (if at all) to establish a practical construction of the rule. A compliance with the rule so construed would in many cases be impossible. Nor does it seem reasonable to re-quire that because one of several defendants takes a copy, the

plaintiffs should be obliged to notify the others. It is not the practice of the clerks to note when or for whom a copy is taken. No rule requires it, and in the present case there is no memorandum or evidence upon the paper to show that a copy had been taken by any person; and this perhaps would be enough, as the plaintiff ought not to be required to look beyond the papers in the suit, or the rule book and docket, to ascertain the fact; but it was admitted on the hearing that Mr. Van Zandt, attorney at law, had taken a copy, he not then being engaged or retained for the purpose of answering the suit.

And as the plaintiff could not know for whom Mr. Van Zandt was retained (if at all) he could notify no one else, unless he notified the defendants personally, which we have said was not required.

In common cases of amendments, they are made either by interlining, &c., the bill itself, or by filing the amendments separately, specifying the places where to be made, or by filing an amended bill, and in all cases making them so as to cause no confusion or mistake in distinguishing the original from the new matter. If in case of inserting a new party, it was in all cases necessary to actually interline the bill at the time, there would be no hesitation in the court, if this was a case of ordinary consequence, to allow such an amendment to be perfected, (the motion having been properly made and granted) at any time *nunc pro tunc:* and it does not seem proper that the large amount said to be involved in the present case, should make any difference in the practice.

Courts of equity have always been liberal in allowing amendments; new parties have been allowed to come in even at the hearing, unless it should appear that even if the amendments were made, the suit could not be sustained. (*Van Epps* v. *Van Deusen*, 1 Hoff. Ch. 320, 326, 328.) In the present case there is nothing in the proposed amendment inconsistent with what was already in the bill; no change or new statement of facts requiring any variation of defence is proposed: it is simply adding the name of a new party claiming in the same right and upon the same state of facts as the parties already in.

Besides, we consider the true principle to be, (except where the rule provides otherwise,) that the amendments moved for and

granted are for all practical purposes, and so far as constituting notice to the other party, or any subsequent proceedings are concerned, to be considered as actually made, although the actual interlineations be not made immediately.   The Supreme Court of New York (Kent, Chief Justice,) considered this to be a sound rule as to amendments at law, (*Jackson, ex dem. etc.* v· *Belknap*, 7 Johns. 300,) and we consider it to be an equitable and sound principle in chancery also.

The motion and order always appear in the papers, and the court will always see that any parties who have appeared shall not suffer for want of notice; and this is all that equity requires.

But in a case like the present, where one stockholder sues *as well for the other stockholders who may become parties to his bill*, as for himself, interlineation of the name of a party who comes in under that clause and in the same right, does not seem necessary. The original complainants have already given their consent that such may come in, and the new party applying to come in, would be considered as coming in under that clause, unless he claimed to come in under some different right, when of course it should be properly set forth.   When the record was made up, it would state that one stockholder presents the bill for himself and for all the other stockholders who should come in, and then would state the fact that certain stockholders did come in; which would be sufficient to entitle them to carry on the suit, and to make them liable for costs if defeated.

And the present is the case of a sworn bill which should not be erased or interlined unnecessarily.   And we believe it is not denied in the present case that Martin is a stockholder, and that he has an interest in the suit. It is not claimed that he is a mere nominal party.

Another point is made by the complainants in answer to this motion—that Dr. Durant has waived his right to remove the suits, and is, in fact, estopped from doing so, by the bond he has given to procure the discharge of the writ of *ne exeat.*

Ordinarily, when a writ of *ne exeat* is issued, the sheriff is to take a bond from the party, that he will not go abroad without leave of court.   Upon motion of the defendant, at any time before or after answer, the court may discharge it absolutely, or may require him to give security to abide by and perform the

decree of the court. In the present case, an order of court was made August 24th, discharging the *ne exeat*. This was done by consent of parties, Mr. Durant executing a bond of that date to the plaintiffs " to abide and perform the orders and decrees of the Supreme Court of the state of Rhode Island," in the present suits. This is equivalent to an agreement to abide by the decision of the state court. Dr. Durant obtained his discharge by making it. It can make no difference whether he obtained it on motion to the court or by order made on agreement of parties. Dr. Durant is therefore estopped by his own deliberate agreement or act from asserting the jurisdiction of any other court over the subject matter.

And we think there is considerable force in the argument of the counsel for the complainant, that it is to be considered as equivalent to an appearance at the time of giving the bond, but not because that bond cannot be given until after appearance or answer.

We will now consider the petitions under the several acts of Congress in their order.

First, the act of 1789. This act provides for the removal from the state courts of suits brought by a citizen of the state where commenced, against a citizen of another state. Under this act it has been held that the citizenship of all the plaintiffs taken together, and of all the defendants, must be such as to make it removable. If one of the plaintiffs is not a citizen of the state where the suit is brought, the suit cannot be removed. And as we consider Martin a party plaintiff, he being a citizen of New York, this suit cannot be removed under that act. It has also been decided that all the defendants must (although not all at the same time) unite in asking for the removal of the suit. And as Dr. Durant, one of the defendants, is estopped by his own agreement from removing the suit, this objection is fatal to the removal. *Smith* v. *Rines*, 2 Sumner, 338; *Ward* v. *Edmonds*, 1 Paine, 410. Another point has also been decided under this act: *Smith* v. *Rines*, Conkling, 155, 2 Sumner, 338; *contra*, *Bliven* v. *N. E. Screw Co.* 3 Blatchf. C. C. 111; *Sayles* v. *N. W. Ins. Co.* 2 Curt. C. C. 212; that only those suits could be removed under it which might have been originally commenced in the Circuit Court of the state where the suit is already brought. It

is hardly necessary to say that the present suit could not have been commenced in the U. S. Circuit Court in Rhode Island. The Credit Mobilier is a Pennsylvania corporation, and other parties are non residents, and could only be sued here in the state courts by foreign attachment, substituted service or advertising. The same language upon which Judge Story founded this decision as to the act of 1789, is used in all the succeeding acts. It is not necessary to consider its effect here.

There is another point also which seems to the court decisive against the removal under this act. By the act of 1789, the defendants are to offer to the state court a sufficient surety for appearing and giving bail in the U. S. Court. The defendants have filed certain bonds for this purpose. But on examining them it appears that they are all joint and not several bonds. Now if the law requires a bond for the security of the plaintiffs, they are entitled to have that bond in the form best adapted to effect the end proposed. They are entitled to have each surety bound in law. A bond which may subject them to a chancery law suit certainly cannot be said to meet this requisition. The complainants may of course waive this, but they have not yet done so, and as the bonds must be filed at the time of entering appearance, it is now too late to file new bonds under the statute of 1789. Hurlstone on Bonds, 56, 149 ; also, 64, 149 ; *Roberts* v. *Carrington*, 2 Hall, 649. The provision as to sureties is nearly the same in the other acts. To some of the bonds there may be other objections which it is not necessary to notice for the purposes of this decision.

Act of 1866. This act was passed July 27, 1866. (No. 173, page 307 of large, and 316 of small, 8vo. ed.) This act is the first of a series of acts which, without enlarging the original jurisdiction of the U. S. Courts, are evidently intended to enlarge their jurisdiction so far as removal is concerned. It was doubtless passed in consequence of the decisions made on the construction of the act of 1789. It provides for this additional case, viz. where one of the defendants is a citizen of a state where a suit is brought. This is the only additional case provided for. In regard to the plaintiffs, the language is the same as that of the act of 1789.

Now, as all the defendants in this case are citizens of other

states, (it having been agreed that R. G. Hazard is not a defendant for the purposes of this motion,) the present case is not the one intended to be provided for by this act. In regard to the plaintiffs, as the language is the same as that of the act of 1789, it must be construed in the same manner, viz.: that the plaintiffs must all be citizens of the state where brought. On this we have already remarked. This act also enlarges the time of making the motion for removal, but of course only in case the parties are such as to bring the case within its provisions.

Act of 1867. This act was passed March 2, 1867, (Chap. 196, page 558 of large ed., 196 of small ed.) This act so far as the description of parties is concerned, is the same as that of 1789, and the same construction must therefore be applied to the language. This we understand to be admitted by the learned counsel. It extends only to suits commenced by a citizen of the state where brought, against a citizen of another state. To justify a removal under this act, the plaintiffs must all be citizens of Rhode Island, The defendants must also all be citizens of other states, and must all join in the removal, and if one of them is estopped from removing, the suit cannot be removed in part. This act also enlarges the time for removing, and gives another ground for removal, viz: that the defendants cannot have a fair trial in the state court on account of prejudice, &c. But these reasons, of course, apply only when the parties are such as to come within its purview.

Act of 1868. This act was passed July 27, 1868, (Chap. 107). By this act " any corporation or any member thereof (other than a banking corporation) organized under a law of the United States, and against which" a suit has been commenced in any court " for any liability or alleged liability of such corporation or any member thereof as such member," may remove the suit to the U. S. Circuit Court, on filing a petition, on oath, before or after issue joined, "stating that they have a defence arising under or by virtue of the Constitution of the United States, or any treaty or law of the United States," and offering good and sufficient surety, &c. &c. Now so far as the description of the parties plaintiff is concerned, it makes no difference under this act whether they are all citizens of the state where the suit is brought or not. Does it extend to cases where such corporation or mem-

ber is not the sole party defendant, but only one of several de- fendants. We think not.

In the act of 1866, Congress took especial care to provide for the case of several defendants and different citizenships : they also took especial care to provide (except in the case of injunction) that the suit should not be removed unless it could be determined as to the others, without the removing party, thus providing as it seems for a partial removal.

Having been so cautious in defining and strictly defining in other acts, the cases in which they were to apply, we cannot construe the present act to apply to any other than the case where the party desiring to remove is the sole defendant.

If they had intended to provide for the case where the corporation was one of several defendants, it would have been very easy to have done as they did in the act of 1866 : and it is to be presumed Congress had all the past acts in view, when they enacted the last law. This is the only one of the acts as to which there can be much doubt in the present case. But it seems the safer ground to adhere to a strict construction, as Congress can very easily remedy the difficulty if there be one. And a suit should not be removed where the right is at all doubtful.

And again, the parties are to file a petition *stating* that they have a defence. Was it intended that the mere *assertion* of the party should oust the jurisdiction of the court ? or that he should satisfy the court that he had such a defence.

On presenting such a case as the United States statutes require, the parties are entitled to a removal ; but the court must be satisfied that the laws are complied with, and in doing so must exercise a judicial discretion. The complainants who opposed the motion demanded a hearing, and are entitled to it as a matter of right. The cases are numerous in the reports where the state courts have heard the parties, and sometimes refused the motion. If the learned judges of the Circuit Court see fit to take jurisdiction in the case, it will relieve the State Court of what promises to be a very tedious suit.

*The motions therefore must be denied.* .

*Bradley, Metcalf, and F. B. Peckham, Jr., for complainants.*

*T. A. Jenckes and Van Zandt, for respondents.*